Affirmed and Opinion filed June 17,
2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00164-CV



Leonard
Phillips, Appellant 

v.

American
Elastomer Products, L.L.C., Appellee 



On Appeal from
the 129th District Court

Harris County, Texas

Trial Court
Cause No. 2007-35985



 

O P I N I O N 

Appellant, Leonard Phillips, appeals from two summary
judgments rendered against him in his personal injury suit against appellee,
American Elastomer Products, L.L.C. (“AEP”).  After sustaining a work-related
injury, Phillips filed suit against AEP for negligence, gross negligence, and
intentional torts.  AEP filed two summary judgment motions, contending that (1)
Phillips’s negligence claims were barred by the borrowed servant doctrine and
the Texas Workers’ Compensation Act (“TWCA”), and (2) there was insufficient
summary judgment evidence to support the intentional tort claims.  The summary
judgments were granted, and Phillips filed the instant appeal.  In two issues, Phillips
contends that the trial court improperly granted summary judgment because (1)
AEP failed to establish as a matter of law that Phillips was not a borrowed
servant, and (2) the summary judgment evidence was sufficient to raise genuine
issues of material fact on the intentional tort claims.  We affirm.  

I.  BACKGROUND

This personal injury case arises from a back injury
Phillips sustained as a result of an autoclave explosion at AEP’s rubber
manufacturing plant in Houston.  About a year prior to the explosion, AEP was in
the process of transporting new equipment to its Houston plant.  To make room
for the new equipment, AEP placed some of its older equipment outside the plant
building.  One of the pieces of equipment AEP decided to store outside was the
autoclave in question.  The autoclave—a vessel used to heat rubber—was taken
out of commission and placed just outside the plant building.  For the
following year, the autoclave remained out of commission and was not inspected
or maintained while out of service.  About a year later, space inside the plant
building became available, and AEP decided to move the autoclave back into the
plant building and bring it back into service.   AEP’s maintenance managers
started a series of tests on the vessel to assure its safe re-commission.  During
the preliminary tests, the autoclave failed and exploded on March 8, 2007.  Many
people were injured, one fatally.  

When the autoclave exploded, Phillips was operating a
press machine nearby. Phillips came to work at AEP through a staffing agency,
Staffing United (“Staffing”).  Phillips was interviewed by Staffing, and AEP
trained Philips at the plant.  Upon hearing the explosion and feeling its
concussion, Phillips attempted to flee the plant building. As he ran, he
tripped and injured his back.  Phillips claimed that he suffered from herniated
discs and was later diagnosed with post-traumatic stress disorder.  Phillips
reported his back injury to Staffing.  Staffing did not contest Phillips’s
request for workers’ compensation, and the workers’ compensation insurance
carrier paid Phillips statutory benefits.[1]  


Thereafter, Phillips filed suit against AEP,
initially asserting negligence, gross negligence, and premises liability.  AEP
moved for summary judgment, claiming that the negligence claims were barred
under the exclusivity provision of the TWCA because Phillips was a borrowed
servant.  Phillips amended his petition, adding intentional infliction of
emotional distress (“IIED”).  AEP moved for summary judgment on the IIED claim on
both no-evidence and traditional grounds.  Phillips amended his petition once
again, removing the IIED claim and adding intentional assault and battery
claims.  The trial court granted the first summary judgment addressing the
negligence claims.  

AEP then moved for summary judgment on the remaining
intentional tort claims, arguing that there was insufficient evidence on the
assault, battery, and IIED claims.[2] 
Upon objection, the trial court—in two separate orders—struck most of
Phillips’s summary judgment evidence because the documents were either untimely
filed or contained inadmissible hearsay.  Phillips did not challenge the
evidentiary rulings.  The trial court granted AEP’s no-evidence and traditional
summary judgments on the intentional tort claims, and this appeal ensued.   

On appeal, Phillips raises two issues.  In his first
issue, in which he challenges the first summary judgment dismissing his
negligence claims, Phillips contends that because he was not a borrowed servant, his
common-law negligence claims were not subject to the TWCA’s exclusivity
provision.  In his second issue, challenging AEP’s second summary judgment on
his intentional assault claims, Phillips contends he produced sufficient summary
judgment evidence on the element of intent.

II.  STANDARDS OF REVIEW

While AEP clearly moved for summary judgment under rules
166a(c) and 166a(i)—traditional and no-evidence grounds—on Phillips’s
intentional tort claims, AEP did not specify whether it was making a
traditional motion for summary judgment or a no-evidence motion on the
negligence claims.  Compare Tex. R. Civ. P. 166a(c), with Tex. R.
Civ. P. 166a(i).  Because the two forms of summary judgment are distinct and
invoke different standards of review, we must make an initial determination
regarding which type of summary judgment was filed on the negligence claims
before we can reach the merits of the trial court’s ruling on these particular
claims.  

When a motion does not clearly and unambiguously
state that it is being filed under rule 166a(i), the nonmovant has no notice
that the movant is seeking a no-evidence summary judgment.  Grimes v.
Reynolds, 252 S.W.3d 554, 558 (Tex. App.—Houston [14th Dist.] 2008, no
pet.).  Accordingly, we construe such summary judgment motion as a traditional
motion under rule 166a(c).  See id. (concluding that when a motion for
summary judgment fails to unambiguously state it is filed under rule 166a(i),
and does not strictly comply with the requirements of that rule, the motion
will be construed as a traditional motion for summary judgment); see also
Adams v. Reynolds Tile and Flooring, Inc., 120 S.W.3d 417, 419–20 (Tex.
App.—Houston [14th Dist.] 2003, no pet.).  Because AEP’s first summary judgment
motion—addressing Phillips’s negligence claims—is not clear on which basis it
seeks summary judgment relief, we construe the motion as a traditional motion. 
Notwithstanding, the record reflects that AEP moved for summary judgment in its
second motion—addressing the intentional tort claims—on both no-evidence and
traditional summary judgment grounds.  

We review a trial court’s summary judgment de novo. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  A
defendant who seeks a traditional summary judgment under rule 166a(c) must
demonstrate that the plaintiff has no cause of action as a matter of law. 
Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215–16
(Tex. 2003); Cullins v. Foster, 171 S.W.3d 521, 530 (Tex. App.—Houston
[14th Dist.] 2005, pet. denied).  A traditional summary judgment is proper when
the defendant either negates at least one element of each of the plaintiff’s
theories of recovery or pleads and conclusively establishes each element of an
affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997); Cullins, 171 S.W.3d at 530.  When the defendant
has carried its summary judgment burden, the burden shifts to the nonmovant to
raise a material fact issue precluding summary judgment.  Virginia Indonesia
Co. v. Harris County Appraisal Dist., 910 S.W.2d 905, 907 (Tex. 1995).  In
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, indulging every reasonable inference, and we resolve any doubts in
the nonmovant’s favor.  Nixon v. Mr. Prop. Management Co., 690 S.W.2d
546, 549 (Tex. 1985).

Because a no-evidence summary judgment is essentially
a pretrial directed verdict, we apply the same legal sufficiency standard in
reviewing a no-evidence summary judgment as we apply in reviewing a directed
verdict.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750–51 (Tex.
2003); Mathis v. Restoration Builders, Inc., 231 S.W.3d 47, 50 (Tex.
App.—Houston [14th Dist.] 2007, no pet.).  We sustain a no-evidence summary
judgment when (1) there is a complete absence of proof of a vital fact; (2)
rules of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a scintilla; or (4) the evidence conclusively establishes the
opposite of a vital fact.  Chapman, 118 S.W.3d at 751; Walker v.
Thomasson Lumber Co., 203 S.W.3d 470, 474 (Tex. App.—Houston [14th Dist.]
2006, no pet.).  Less than a scintilla of evidence exists when the evidence
offered to prove a vital fact is so weak as to do no more than create a mere
surmise or suspicion of its existence, and in legal effect is no evidence.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).  More than a
scintilla of evidence exists when the evidence rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions as to
the existence of the vital fact.  Id.  

III.  NEGLIGENCE CLAIMS:  BORROWED SERVANT DOCTRINE 

In the trial court, Phillips asserted three
negligence claims against AEP:  (1) negligence and gross negligence for failure
to maintain a safe workplace, failure to warn of a dangerous workplace, and
failure to inspect premises for latent defects; and (2) premises liability for
failing to warn Phillips, an invitee, of a condition on the plant premises that
posed an unreasonable risk of harm.  AEP sought traditional summary judgment on
these negligence claims, arguing that the claims were barred under the
exclusivity provision of the TWCA and the borrowed servant doctrine.  

A.  TWCA’s Exclusivity Provision

Under the TWCA, a subscriber employer is protected by
the Act’s exclusive remedy provision, which bars common-law causes of actions
by its injured employees.  Tex. Labor Code Ann. § 408.001(a) (Vernon 2006). 
Thus, an employer who pleads and proves TWCA subscriber status is immune from
liability for common-law negligence, and the employee’s exclusive remedy lies within
the TWCA.  See id.; see also Exxon Corp. v. Perez, 842
S.W.2d 629, 630–31 (Tex. 1992) (per curiam).  When there is a question as to
whether one is an “employer” under the TWCA, Texas courts turn to the borrowed
servant doctrine.  Tex. Workers’ Comp. Ins. Fund v. Del Indus., Inc., 35
S.W.3d 591, 595 (Tex. 2000); Lockett v. HB Zachry Co., 285 S.W.3d 63, 75
(Tex. App.—Houston [1st Dist.] 2009, no pet.).  As applied in workers’
compensation cases, the borrowed servant doctrine acts to protect those employers
who have the right to control the manner and details of an employee’s work.  Wingfoot
Enter. v. Alvarado, 111 S.W.3d 134, 144 (Tex. 2003); Thompson v.
Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex. 1990); Gibson v. Grocers
Supply Co., 866 S.W.2d 757, 760 (Tex. App.—Houston [14th Dist.] 1993, no
writ); Marshall v. Toys-R-Us Nytex, Inc., 825 S.W.2d 193, 195–96 (Tex.
App.—Houston [14th Dist.] 1992, writ denied).  Under the right-of-control test,
an injured worker is held to be the employee of the employer who had the right
of control over the details of the work at the time of the injury.  Pederson
v. Apple Corrugated Packaging, Inc., 874 S.W.2d 135, 137 (Tex.
App.—Eastland 1994, writ denied); Hughes v. Compaq Computer Corp., No.
14-96-00025-CV, 1996 WL 711233, at *2 (Tex. App.—Houston [14th Dist.] Dec. 12,
1996, writ denied) (not designated for publication).  An employer who had the
right of control over the employee at the time of the injury is an “employer”
for workers’ compensation purposes.   If the details of the employee’s work are
controlled by someone other than the employer, then the latter is not protected
by the exclusive remedy under the TWCA.

To prevail on its affirmative defense of subscriber
status, AEP was required to plead and prove: (1) Phillips was a borrowed
servant, (2) Phillips was entitled to workers’ compensations benefits, and (3)
AEP had workers’ compensation insurance that covered claims asserted by
Phillips.  See Perez, 842 S.W.2d at 630–31.  On appeal, Phillips challenges
only his status as a borrowed servant, i.e., whether AEP had the right
of control over the details of his work.  He does not challenge the latter two
elements.

B.  Right of Control Over Phillips

When, as here, the right of control is not expressed
in a written agreement, right of control is inferred from the facts and
circumstances of the work.  Producers Chemical Co. v. McKay, 366 S.W.2d
220, 226 (Tex. 1963); Marshall, 825 S.W.2d at 196.  We consider the
nature of the work to be performed, the length of the employment, the type of
machinery furnished, the acts representing an exercise of actual control, and
the right to substitute another operator on a machine.  McKay, 366
S.W.2d at 226.  The type of control normally exercised by an employer includes
determining when and where to begin and stop work, the regularity of hours, the
amount of time spent on particular aspects of work, the tools and appliances
used to perform the work, and the physical method or manner of accomplishing
the end result.  Thompson, 789 S.W.2d at 278–79.  

Phillips cites the following evidence to support his
contention that Staffing, not AEP, had the right to control his work:  (1) Phillips
refused to operate a forklift when requested to do so by AEP because Staffing
had instructed him not to operate unfamiliar equipment; (2) Staffing issued his
payroll checks, paid his workers’ compensation benefits, and hired and fired
him; (3) AEP did not furnish all of the tools necessary to perform his work;
and (4) AEP did not provide safety training.

The trial court struck the evidence supporting the
forklift allegations, and Phillips never challenged the trial court’s ruling.  See
Feagins v. Tyler Lincoln-Mercury, Inc., 277 S.W.3d 450, 455 (Tex.
App.—Texarkana 2009, no pet.) (refusing to consider affidavit stricken in the
trial court and not challenged on appeal); McClure v. Denham, 162 S.W.3d
346, 349 n.2 (Tex. App.—Fort Worth 2005, no pet.) (noting that appellate court
may  consider only evidence which is properly before the trial court when
reviewing propriety of summary judgment).  Because the trial court struck the evidence
of forklift operation, and Phillips failed to challenge that ruling, there is
no evidence that Phillips refused to perform work for AEP at Staffing’s
instruction.  Furthermore, the fact that Staffing issued payroll checks and
paid workers’ compensation to Phillips does not necessarily establish that
Staffing had the right of control over Phillips’s work at AEP’s rubber
manufacturing plant.  See Employers Cas. Co. v. Am. Employers Ins.
Co., 397 S.W.2d 292, 296 (Tex. App.—Amarillo 1965, writ ref’d n.r.e.).  Likewise,
Staffing’s hiring and firing of Phillips is not dispositive of the right of
control over Phillips’s work at AEP’s plant.  

AEP submitted undisputed evidence that Phillips
reported to work at AEP, not Staffing.  AEP set Phillips’s work hours and
breaks.  AEP’s employees trained Phillips on the work to be performed.[3]  AEP
directed what work Phillips was to perform.  AEP also provided the machines,
tools, and raw materials for Phillips’s work.  See Thompson, 789 S.W.2d
at 278–79 (reasoning that the type of control normally exercised by an employer
includes determining when and where to begin and stop work, the regularity of
hours, the tools and appliances used to perform the work, and the physical
method or manner of accomplishing the end result).  

The only feasible attempt by Phillips to dispute
AEP’s evidence is his allegation that he used his personal tools—a socket set
and screwdriver—to operate one of the machines.   Phillips testified that he
“periodically” used his personal tools because the original tools, provided
by AEP, would sometimes “come up missing.”  Phillips made this particular
statement in his stricken affidavit and twice in his deposition.  AEP
successfully moved to strike one of the deposition statements, but did not
object to the other statement.    Assuming we can review the one deposition
statement, such statement is insufficient to demonstrate AEP’s lack of control over
Phillips’s work.  The general work to be performed was the operation of
industrial equipment to heat rubber.  Phillips alleged in the statement that he
used the socket set and screwdriver to change the molds on a machine.  Phillips
acknowledged in his deposition that similar tools were provided by AEP, but
“periodically” disappeared.  Furthermore, AEP’s undisputed evidence reflects that
the socket set and screwdriver were not required tools to change the molds or
to operate the rubber-hearing machinery.

Phillips further challenges AEP’s borrowed servant
designation because he, Phillips, did not know about the employee-lending
agreement between AEP and Staffing.  See Guerrero v. Standard Alloys Mfg.
Co., 566 S.W.2d 100, 102 (Tex. App.—Beaumont 1978, writ ref’d n.r.e.)
(“[I]n order to establish an employer-employee relationship between an employee
and a borrowing employer, the employee must know or be charged with knowledge
of the lending agreement.”).  Putting aside for a moment that Guerrero is
not binding authority, its requirement that a borrowed employee must know of a
lending agreement runs counter to recent Supreme Court and court of appeals
cases examining the borrowed servant doctrine.  Texas courts determining whether
an individual is borrowed servant have done so exclusively under the
right-of-control test.  See Alvarado, 111 S.W.3d at 144; Del Indus.,
35 S.W.3d at 595 (courts determine whether a company is an employer under the
right-of-control test); Thompson, 789 S.W.2d at 278; Gibson, 866
S.W.2d at 760; Marshall, 825 S.W.2d at 195–96.  Furthermore, this Court has
cautioned against the legal accuracy of Guerrero:

The court in Guerrero stated that “in order to
establish an employer-employee relationship between an employee and a borrowing
employer, the employee must know or be charged with knowledge of the lending
agreement.”  Even if this were a correct statement of law, our
disposition of this case would not be affected.  The recorded demonstrates [the
employee’s] awareness that she was loaned [to the defendant company].

Mosqueda v. G & H
Diversified Mfg., Inc., 223 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.]
2007, pet. denied) (citations omitted) (emphasis added).[4]  Applying
the right-of-control rule, the record reveals that AEP pleaded and presented
sufficient summary judgment evidence that Phillips was a borrowed servant. 
Furthermore, AEP provided undisputed evidence of its subscriber status in
compliance with the TWCA, and Phillips was therefore subject to the Act’s
exclusivity provision and possessed no common-law right of action. 
Accordingly, we conclude, as a matter law, appellant’s negligence claims are
barred under the borrowed servant doctrine and the TWCA’s exclusivity
provision.  The trial court properly granted AEP’s traditional summary judgment
on Phillips’s negligence claims.  We overrule Phillips’s first issue.  

IV.  INTENTIONAL ASSAULT CLAIM:  EVIDENCE OF INTENT

Although the exclusive remedy provision of the TWCA
bars Phillips’s negligence claims, the TWCA does not bar recovery for
intentional torts.  See Tex. Labor Code Ann. § 408.001(a) (applying
exclusivity provision only to accidental injuries); see also Tex. Const.
art. I, § 13 (prohibiting statutory exemption from common law liability for
intentional injuries).  In his second issue, Phillips contends that summary
judgment on his assault claim was improper because he presented sufficient
evidence on AEP’s intent to injure.  Phillips bases his intent argument on the
proposition that only reckless conduct is needed, not specific intent, to
commit assault.  Phillips contends that because the criminal and civil
definition of assault includes a reckless mental state, he need show only
recklessness—that AEP was aware of, but consciously disregarded, a substantial
and unjustifiable risk of harm—to recover for assault.  While Phillips is
correct on the statutory definition of criminal and civil assault, the cases
relied upon by Phillips are distinguishable:  none of the cases involves the
intentional-tort exception to the TWCA.  Phillips cites no authority to support
his contention that the intentional-tort exception to the TWCA applies where
the defendant acted recklessly.  See Tex. R. App. P. 38.1(i); Nguyen
v. Kosnoski, 93 S.W.3d 186, 188 (Tex. App.—Houston [14th Dist.] 2002, no
pet.).  Even if we assume that reckless conduct is sufficient to overcome the
TWCA’s intentional-tort exception, the record before us does not raise a fact
issue on intent.  

Phillips contends that AEP was reckless because: (1)
it failed to maintain the autoclave while it was out of commission; and (2) it
failed to follow safety requirements in bringing the vessel back into service. 
Phillips relies on the following evidence to support his reckless-conduct
allegations: Doug Efrid’s deposition, the OSHA citation, Skinner’s affidavit,
and James Patterson’s deposition.  The OSHA citation and Skinner’s affidavit
were stricken below and those rulings are not challenged on appeal.  Because evidence
which has been excluded by written order or ruling of the trial court is not
part of the summary judgment evidence to be considered, we cannot consider this
evidence regarding intent.  See Feagins, 277 S.W.3d at 455; see also
McClure, 162 S.W.3d at 349 n.2.  

With respect to Efrid’s and Patterson’s depositions,
Phillips contends that the testimony shows AEP’s recklessness in maintaining
the vessel while out of service and in bringing the vessel back into service. 
Patterson was the plant manager, and Efrid was AEP’s maintenance manager. 
Phillips contends that AEP knew about specific explosion risks associated with
high pressure levels and explosions when bringing a vessel back into service. 
The safety relief valve monitors pressure levels and relieves excess pressure
from an autoclave.  Phillips contends that because excess pressure is a known
risk when re-energizing an autoclave, AEP acted recklessly when it did not
inspect the safety relief valve to check if it were working properly.  However,
Phillips’s allegations are not supported by the cited depositions.  Even accepting
Phillips’s bald assertions as evidence, they tend to establish only negligent
conduct, not intentional injury.  See Reed Tool Co. v. Copelin, 689
S.W.2d 404, 406 (Tex. 1985) (concluding that the employer must have the
specific intent to inflict injury to commit an intentional tort).  

 Efrid testified that he began the testing process to
re-commission the vessel.  He tested the pressure controllers and verified that
they were working properly and checked the pressure levels.  Subsequently, the
autoclave failed during the tests.  Efrid and Patterson both testified that AEP
did not intend for the autoclave to fail, did not know it would fail, and did
not know that the testing would result in the autoclave’s exploding.  The
evidence is uncontested that, upon re-commissioning the autoclave, AEP did not
have a specific intent to inflict the injury.  See id. at 407 (holding
that an employer’s intentional failure to provide a safe workplace does not
rise to the level of intentionally injuring its employees unless the employer
believes its conduct is substantially certain to cause the injury).

Phillips further argues that Patterson conceded AEP’s
recklessness in his deposition.  We disagree.  Read in its entirety, the
deposition reflects Patterson’s agreement with the general idea that employees
should adhere to safety requirements when working on industrial equipment.  Because
the hypothetical scenarios posed to Patterson were not similar to the facts of
the instant case, Patterson’s deposition did not establish recklessness or
intent to injure.  The trial court properly granted summary judgment on the
intentional tort claim of assault.  We overrule appellant’s second issue.

We affirm the trial court’s judgment.








                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Brown.









[1]
Phillips claims that after the blast, the Occupational Safety and Health
Administration (“OSHA”) issued five citations to AEP:  three citations for
having performed a faulty inspection of the autoclave that caused the
explosion; and two citations for having failed to provide sufficient protective
lathes and grinders and eye protection for AEP’s workers.  





[2]
Although Phillips removed his IIED claim in his fifth amended petition, out of
caution, AEP moved for summary judgment on the IIED claim, along with
Phillips’s assault and battery claims.





[3]
Phillips contends that Todd Brown, one of the workers who trained him, was not
an employee of AEP.  The evidence Phillips submitted to support this factual allegation
was stricken.  Further, AEP submitted undisputed evidence that Brown was an
employee of AEP at the time Brown trained Phillips. 





[4]
The facts of Guerrero are distinguishable: as detailed above, most of
Phillips’s work interaction was with AEP.  Accordingly, Phillips is charged
with knowledge of the oral lending agreement between Staffing and AEP.